IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM HEMSWORTH II, | ) | |
| | ) | Case No. 04 C 5622 |
| Plaintiff, | ) | |
| | ) | Judge Virginia M. Kendall |
| v. | ) | |
| | ) | |
| QUOTESMITH.COM, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff William Hemsworth II ("Hemsworth") filed a two-count suit against his former employer, Quotesmith.com ("Quotesmith"). Hemsworth alleged that Quotesmith terminated him because of his age (56) in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq. ("ADEA").[1] Quotesmith moved for summary judgment on all counts. For the reasons set forth below, Quotesmith's motion for summary judgment is granted.

**Statement of Undisputed Facts**

Plaintiff Hemsworth worked as Senior Vice President for Marketing at Quotesmith, an internet-based company, for slightly more than two years. (Quotesmith's Local Rule 56.1 Statement of Material Facts ¶ 11, hereafter "Quotesmith at ¶__"). Prior to hiring Hemsworth, the President of Quotesmith, Robert Bland ("Bland"), performed all marketing work for the company himself. When

---

[1] Hemsworth's initial pleadings made passing reference to a potential state law claim for unpaid vacation time. Quotesmith briefly refuted the claim in its summary judgment motion. Because Hemsworth stated that the "vacation pay issue is not before this court for adjudication" but is instead the subject of a pending matter in the Illinois state courts, the Court will not address this claim. See Plaintiff's Rule 56.1(b) Statement of Contested Issues of Material Fact, ¶¶ 102-109.

Quotesmith increased its annual marketing budget from $14 million to $20 million for the 2000 fiscal year, Bland decided to hire a marking expert. Quotesmith at ¶13, 21.

At the time Bland sought a marketing expert, Hemsworth was a retired marketing executive with over 25 years of experience in corporate marketing. *Id.* at ¶25. Although Hemsworth told Bland during initial employment discussions that he sought part-time employment only, Hemsworth impressed Bland to such an extent during the interview that Bland cajoled Hemsworth into taking a full-time position. *Id.* at ¶¶31-33. Hemsworth signed an employment contract with Quotesmith on November 24, 1999, and became the Senior Vice President of Marketing, with an annual salary of $150,000 and an annual budget of more than $20 million. *Id.* at ¶¶ 34-38. At the time he was hired, Hemsworth was 54 years old. *Id.* at ¶ 31.

Early in 2000, Hemsworth suffered a minor stroke and was hospitalized. *Id.* at ¶¶118-120. He returned to work full-time approximately 6 days later. *Id.* Hemsworth continued to work full time without medical problems through the end of the year, at which time Bland renewed Hemsworth's contract, and gave him a $30,000 raise on the basis of his impressive performance. *Id.* at ¶¶ 43, 122.

Quotesmith suffered financial losses during the 2000 year.[2] *Id.* at ¶44. In 2001, Quotesmith attempted to reduce costs by, among other changes, reducing the marketing budget from $20 million to $7 million, and laying off 25 members of its staff in a reduction in force ("RIF"). *Id.* at ¶ 52, 86.

---

[2] Hemsworth disputes the sworn testimony of Bland and other employees with regards to the financial status of the company in his Rule 56.1(b) Statement of Contested Issues of Materal Fact (hereinafter "Hemsworth at ¶__"). In support of his position, Hemsworth relies solely upon his own affidavit testimony that he "cannot believe any of [defendant affidavit] statements are true. . ." Hemsworth at ¶ *passim*, Plaintiff's Opposition to Motion for Summary Judgment, Ex. A. Hemsworth's conclusory statement that Quotesmith's officers testified falsely, without any supporting evidence whatsoever, does not create a material issue of fact to avoid summary judgment. *See Mills v. First Fed. Savings & Loan Assoc. of Belvidere*, 83 F.3d 833, 841 (subjective beliefs of the plaintiff are insufficient to create genuine issue of material fact); *Roger Whitemore's Automotive Services, Inc. v. Lake County, Illinois*, 424 F.3d 659, 664 n.2 (7th Cir. 2005) (explaining that local rule 56.1 denials based upon the opponent's belief that the movant's 51.6 statements are fabrications are not appropriate). Therefore, we take these facts as undisputed.

The Quotesmith officer in charge of the RIF "did not consider the ages of any employees in the pool of employees he considered in deciding which ones to recommend for termination." *Id.* at ¶58. In addition to the RIF, Quotesmith terminated its Human Resources Director, and did not replace him. *Id.* at ¶¶63-65.

In the fall of 2001, Bland decided not to renew the annual contracts of Hemsworth or certain other Quotesmith officers. In accordance with the terms of Hemsworth's contract, which renewed annually, Bland gave Hemsworth notice in October 2001 via email that the contract would not be renewed for another year, but assured Hemsworth that he was retained. *Id.* at ¶ 83-85. In early 2002, Bland terminated Hemsworth's at-will employment. *Id.* at ¶91-92 Bland did not hire a replacement for Hemsworth, but instead resumed direction of company marketing himself, as he had been doing prior to the decision to hire Hemsworth in 1999. *Id.* at ¶92-94. According to Bland's deposition testimony, he made the decision to terminate Hemsworth on the basis of the company's financial deterioration, and because the company had further reduced the marketing budget to approximately $2.9 million. *Id.* at ¶90, 94, 21. Hemsworth alleges that he was terminated because of his age, 56 years.

**Legal Standard**

Summary judgment is appropriate where there is no genuine issue of material fact, such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the non-moving party cannot rest on its pleadings, but must use evidentiary tools - depositions, answers to interrogatories, and affidavits that are part of the record - to show that a genuine issue of material fact remains justifying trial. *Id.* at 324. A material fact is a fact that is

3

outcome-determinative under the governing law. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). The court must construe all facts in a light most favorable to the non-moving party, and must view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago,* 267 F.3d 723, 729 (7th Cir. 2001).

To establish a claim under the ADEA, a plaintiff must show that he would not have been terminated "but for" his employer's intentional age-based discrimination. 29 U.S.C.A. § 623. There are two methods by which to show discrimination under the ADEA: (i) the "direct method," whereby the plaintiff shows factual evidence of the defendant's intent to discriminate, or (ii) the indirect, "burden-shifting" method articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1219 (7th Cir. 1980) (extending *McDonnell Douglas* to age discrimination cases).

**Discussion**

*The Direct Method*

A plaintiff may show two kinds of permissive evidence under the "direct method" of proof: (i) so-called "direct evidence" of discriminatory intent; or (ii) circumstantial evidence suggesting discriminatory intent. *See also Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 794 (7th Cir.2005). "Direct evidence" of age discrimination is evidence which, if believed by the trier of fact, "will prove the particular fact in question without reliance on inference or presumption." *Miller v. Borden, Inc.* 168 F.3d 308, 312 (7th Cir. 1999). Direct evidence claims are rare, because they essentially require an admission by the decision-maker that he acted based upon the prohibited animus. *Cerutti v. BASF*

4

*Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003). Because it does not appear that Hemsworth attempts to show direct evidence, the Court will not address this portion of the direct method test further.

Plaintiffs more commonly use circumstantial evidence to show discrimination under the direct method. The plaintiff will use evidence to create a "convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decision maker." Bits and pieces suggesting discriminatory intent, including statistical evidence that employees without the discriminatory characteristic received systematically better treatment, constitute circumstantial evidence. *See Rudin v. Lincoln Land Comm. Coll.*, 420 F.3d 712, 720-21 (7th Cir. 2005), *citing Troupe v. May Dept. Stores*, 20 F.3d 734, 736 (7th Cir. 1994). That circumstantial evidence, however, "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003); *see also Cerutti*, 349 F.3d at 1061.

The evidence offered by Hemsworth does not constitute circumstantial evidence of discrimination by Bland or the other officers at Quotesmith. Aside from his own affidavit testimony stating his personal belief that his opponents have testified falsely, Hemsworth proffers three pieces of circumstantial evidence as issues of material fact justifying trial. Even making all reasonable inferences in favor of Hemsworth, none of these facts create circumstantial evidence that Quotesmith discriminated against Hemsworth on the basis of his age.

Hemsworth's first two pieces of evidence are isolated comments Hemsworth believes suggest discrimination. He alleges (i) that Bland told Hemsworth he looked "tired" the week he returned to work after his stroke, and (ii) that Bland made "age biased comments about a specific employee" at an unspecified executive meeting in 2001. Hemsworth does not remember the time or place of the meeting, the substance of the comment, or the employee about whom the comment was made, although Hemsworth admits that the comment was not made about him personally.

5

Quotesmith ¶¶ 119, 133-35. At the summary judgment stage, we must assume Bland made the statements attributed to him. *Miller*, 168 F.3d at 312.

With respect to the comment at the executive meeting, even viewing all evidence in the light most favorable to the plaintiff, Hemsworth cannot relate the comment to his own termination. "If the evidence consists of isolated statements, those statements should be contemporaneous with the discharge or causally related to the discharge decision making process." *Geier v. MedTronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996). Hemsworth does not allege that Bland made the comment about him personally, or provide evidence suggesting that the comment concerned the discharge of the *other* employee. Unless he can relate the age-based comment to his own termination, Hemsworth cannot show that this comment raises a genuine issue of material fact as to discriminatory intent behind his own termination.

Bland's comments about Hemsworth's appearance upon return from the hospital fall victim to the same deficiency, because Hemsworth does not provide any evidence that the comment relates to the decision to terminate his employment. Quite to the contrary, any negative inference from the comments made to Hemsworth after his stroke are refuted by the undisputed two full years of employment after the stroke, the positive comments as to his work performance, and the raise at the end of the same year in which he had the stroke. Rather than hinting at discriminatory intent, the undisputed facts suggest that Quotesmith considered Hemsworth's continued employment with the company to be important enough to warrant payment at a premium.

Finally, Hemsworth offers an exhibit alleging the names and ages of 25 employees of Quotesmith who were laid off in August 2001 as part of the RIF. Hemsworth presumably offers this sheet as evidence of a discriminatory pattern at Quotesmith, as Hemsworth himself is not one of the 25. Hemsworth ¶ *passim*, Plaintiff's Memorandum in Opposition, Ex. C. As Quotesmith argues via

6

separate motion, Hemsworth did not authenticate this exhibit and the Court could strike it from the record on that ground alone. Even assuming its authenticity, however, the exhibit does not constitute circumstantial evidence of discrimination against Hemsworth.[3]

Hemsworth relies upon Exhibit C to show that 75% of the employees terminated as part of the August 2001 RIF were over the age of 40. Statistics purporting to show disparate impact, standing alone, are rarely enough to show violation under the ADEA. *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617 (7th Cir. 2000). To be probative circumstantial evidence of disparate treatment against an individual plaintiff, the statistics must offer a comparison against some base group. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). The statistics must look at "the same part of the company where the plaintiff worked; include only other employees who were similarly situated with respect to performance, qualifications, and conduct; the plaintiff and the other similarly situated employees must have shared a common supervisor; and treatment of the other employees must have occurred during the same [reduction in force] as when the plaintiff was discharged." *Id.*

The proffered statistics do not help Hemsworth demonstrate circumstantial evidence. First and foremost, he was not terminated as part of the RIF. Additionally, he has not offered any evidence to counter Quotesmith's evidence that the positions of these persons were different, or that they reported to different personnel within the company than did Hemsworth. The mere evidence of the purported names and ages of 25 individuals laid off months prior to Hemsworth's own

---

[3]The Court declines to rule on the authenticity of Exhibit C as requested by Quotesmith via separate motion, because the Court noticed that this same unauthenticated sheet appears to have made its way into the Court system in other cases. In order to prevent another such occurrence, the Court turns directly to its merit. *See Gomolka v. Quotesmith.com*, 2005 WL 2614850 (N.D. Ill. Oct. 7, 2005) (granting summary judgment to Quotesmith against another plaintiff attempting to use the same statistic as at issue here).

7

termination does not rise to the level of circumstantial evidence of intent to discriminate against these 25 individuals, much less Hemsworth.

*The Indirect Method*

Even without sufficient circumstantial evidence, Hemsworth has one more option to survive summary judgment. As discriminatory intent can be notoriously difficult to prove, a plaintiff need not have direct or circumstantial evidence of discrimination in order to show a triable issue of fact. Under the "indirect method" framework established by the Supreme Court in *McDonnell Douglas*, the plaintiff may defeat summary judgment via indirect evidence if the plaintiff can establish a *prima facie* case of age discrimination. *Radue*, 219 F.3d at 617. The plaintiff can satisfy this initial burden by demonstrating that: (1) he belongs to the protected class; (2) he performed his job according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably by the employer than he was. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885-86 (7th Cir. 2001). If the plaintiff produces this initial evidence, the burden shifts to the defense to show that a legitimate, non-discriminatory reason existed for the adverse action against the employee. *Id.* at 886. If the defense can show that reason, then the burden shifts back to the plaintiff to produce evidence suggesting that the proffered reason is merely a pretext for discrimination. *Id.*, *see also Novak v. Int. Truck and Engine Corp.*, 406 F. Supp. 2d 954, 962 (N.D. Ill. 2005), *citing Johnson v. Zema Systems Corp.*, 170 F.3d 734, 742-43 (7th Cir. 1999).

Our analysis need go no further than the first part of the indirect test, because Hemsworth cannot establish a *prima facie* case of discrimination. Hemsworth meets the first three prongs of the test: he is over 40, performed his job to his employer's expectations, and was terminated. But, he cannot show that similarly situated employees outside his class (younger than 40) were treated more

8

favorably. A similarly situated employee is one who is "directly comparable to [the plaintiff] in all material respects." *Bio v. Fed. Express Corp.,* 424 F.3d 593, 597 (7th Cir. 2005) (citing *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir.2002)). Hemsworth does not dispute that he was the only Senior Vice President of Marketing at Quotesmith; nor does he provide evidence of younger persons with similar positions that were treated more favorably.

Even if we allow Hemsworth to pass the prong of "similarly situated," Hemsworth's indirect discrimination claim fails.[4] If a plaintiff establishes a *prima facie* case of age discrimination, the burden shifts back to the defendant to offer a legitimate, non-discriminatory reason for the adverse action. *Johnson v. Zema Systems Corp.,* 170 F.3d 734, 742 (7th Cir. 1999). Quotesmith has more than met its burden in this respect. The evidence in the record of Quotesmith's financial hardship goes uncontested by Hemsworth, including evidence that the company was operating at a loss, and that Hemsworth's marketing budget - the reason for his employment - had been cut by more than 80%. Quotesmith at ¶ 90. Quotesmith operated without a marketing director when the marketing budget was $14 million annually; by the time Bland terminated Hemsworth, the marketing budget had dropped from $20 million to $2.9 million. *Id.* In order to show that a defendant's articulated non-discriminatory explanation for the adverse employment action was pretextual, the plaintiff must "*specifically* refute the facts which allegedly support the employer's proffered reasons." *Mills,* 83 F.3d at 845 (emphasis in original). Hemsworth offers no evidence to show that Quotesmith's stated, non-discriminatory reason for his termination - his position was no longer financially affordable -

---

[4]Hemsworth may believe he can establish a *prima facie* case under *Miller v. Borden*, which made an exception to the "similarly situated" requirement for those cases in which an employer terminates a single employee and does not replace him, but where evidence exists that a younger (though still within the protected class) employee performed some of the job functions. In this case, Bland reassumed the marketing functions for Quotesmith after terminating Hemsworth. Quotesmith at ¶94. Bland was 47 years old in 2001. *Id.* at ¶ 14.

9

is a pretext for discrimination. Hemsworth has not met his burden to refute Quotesmith's legitimate and non-discriminatory reasons for its actions.

**Conclusion**

In conclusion, there are no genuine issues of material fact in the case at bar, and Quotesmith has demonstrated that it is entitled to summary judgment as a matter of law. Hemsworth cannot make out a case of age-related discrimination in violation of the ADEA through direct or circumstantial evidence, and cannot satisfy the elements of a *prima facie* case under the indirect method. Additionally, Quotesmith has presented supporting evidence of the legitimate, non-discriminatory reasons for Hemsworth's termination. The Court grants summary judgment in favor of defendant Quotesmith on all counts of Hemsworth's complaint.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Dated: March 10, 2006